## Lisovitch v. Philadelphia

*Alexander F. Barbieri,* for plaintiffs.

*David Berger,* City Solicitor, *James L. Stern,* Deputy City Solicitor, and *Isador Kranzel,* Assistant City Solicitor, for defendant.

ALESSANDRONI, P. J., May 13, 1957.—This is an action in equity by a group of firemen of the City of Philadelphia on behalf of all uniformed firemen to restrain the city from interfering with their right and privilege of procuring their uniforms and uniform clothing and equipment from suppliers selected by plaintiffs' representatives. A rule was granted upon defendants to show cause why a preliminary injunction should not issue.

A hearing was had on the rule. Although it is conceded by all concerned that this matter presents no factual issues, an understanding of the facts and background will be helpful in defining the legal question involved.

Firemen of the City of Philadelphia are required to wear prescribed uniforms; the city does not now provide uniforms at its cost, though at times it has done so; the uniforms are and remain the personal property of the firemen. Prior to January, 1955, all purchases of uniforms were made by a uniform or clothing committee selected by the uniformed members of the fire department. This committee solicited bids based on department specifications, opened and awarded the contracts to the lowest responsible bidder. The moneys appropriated by the city for a uniform allowance were paid directly to the suppliers upon vouchers of the uniform committee to the limit of the allowance for each individual. If the cost for any individual exceeded the allowance, the committee acted as a collection and disbursement agent and paid the supplier.

Provision for uniform allowances has been made for many years by the city in its budget; several methods of disbursing the allowances have been utilized. The present budget provides for payment directly to the contractor. The allowance for all except newly appointed firemen for 1957 is $50 per man; new fire-

men are allowed $100. Contracts for the uniforms required are let by the city's procurement department.

In January, 1955, by order of the fire commissioner, the uniform committee was disbanded and procurement of the uniforms was turned over to the city's procurement department. We are unable to appreciate the force of the argument over budgetary procedure and the classification of the appropriation within the budget. Important as the argument is, it has no weight on the legal issue presented for determination.

The basic premise of plaintiffs' argument is that title to the uniforms is vested in the individual fireman; from that premise the remainder of plaintiffs' argument follows. For all practical purposes, defendant has conceded this point with certain immaterial qualifications. For the purpose of this examination, we accept that premise. Plaintiffs then argue that the city's contribution by way of a clothing allowance does not affect the ownership of the uniforms. This point is also granted. Therefore, if the title is in the individual, and if the $50 allowance does not affect the title, it therefore follows that the allowance is compensation and the city has no more control over the expenditures of that compensation than it has over food purchased by the firemen for their families from their ordinary and usual salaries. An attempt by the city to interfere with the expenditure of the firemen's compensation is an unreasonable interference with the firemen's property rights.

Plaintiffs rely heavily on Kaufman v. Philadelphia, 293. Pa. 270, in support of their proposition that the right to the allowance is vested in the individual fireman. Comparing the ordinances in Kaufman v. Philadelphia, supra, and the instant case, plaintiffs note that the ordinances are somewhat identical in that neither of the ordinances provide for payment of the

allowance to the individual. Therefore, plaintiffs conclude that the same result must follow, i.e., the city's interest in the manner of expenditure ends with appropriation of the money, and an attempt to have the city let the contracts is an unwarranted interference. Careful reading of the record and testimony in Kaufman v. Philadelphia reveals that, while plaintiff's comparison of the ordinances is technically correct, plaintiffs' reliance thereon is misplaced.

In Kaufman v. Philadelphia, supra, Judge Gordon ruled that although the language of the ordinance lacked specific authority for individual payment, authority could be found from a comparison with ordinances which had preceded the one at issue. See opinion of Gordon, J., paper books of the Supreme Court of Pennsylvania, vol. 2572 (Philadelphia Law Library), record pages 106a-108a.

From 1911 to 1924, the budget ordinances specifically authorized payment of the uniform allowance to each individual; the appropriation enumerated the number of each classification in the fire department and the amount provided for uniforms in each classification. In the years 1924 to 1927, a lump sum appropriation was made to the department of supplies for uniforms; this department then purchased the uniforms and the uniforms remained city property. Judge Gordon, in Kaufman v. Philadelphia, supra, concluded that the enumeration of the number of uniforms multiplied by the allowance per individual was sufficiently similar to the budget ordinances prior to 1924 to authorize individual payment.

Judge Gordon's opinion clearly recognized the power of the city to determine how and in what manner it would appropriate and expend moneys for uniforms. We do not believe that the ownership of the uniforms determines the result. In Kaufman v. Philadelphia, supra, and in the instant case, title to uni-

forms is in the individuals, not the city. But the opinion of Judge Gordon in Kaufman v. Philadelphia, supra, clearly indicates that the individuals in the police and fire departments were not only entitled to receive cash, which apparently they did, but in all probability the right was legally enforceable against the city. It is not suggested that the firemen in this case could demand cash.

In order that we may more sharply focus the legal issue, we shall examine some of the fundamental propositions which are at the heart of this controversy. It is the unquestioned right of the city as an employer to require employes to acquire and wear uniforms as a condition of their employment. If the city can require uniforms, it can also insist that the uniforms meet minimum standards of condition; further, it can order an employe to replace all or any part thereof if an inspection reveals that the uniform does not meet minimum requirements. The employes could be required to purchase and replace the uniforms from their own funds without any contribution from the employer.

Apart from any consideration of contribution by the city, uniforms purchased as indicated above would be the personal property of the individuals, and the city could not control the purchase thereof except by establishing the specifications. The city as employer could also supply uniforms at its own cost; it appears that the city could allow employes to retain the uniforms upon termination of their employment, or it could insist that they be returned to the proper department.

Instead of requiring uniforms at the expense of the employe, the city-employer provides an allowance to help defray the expense; this assistance is in the nature of additional compensation. It is logical that if any employe's purchases exceed the allowance, he

must supply the deficiency, because but for the allowance he would have to meet the entire cost. The manner of appropriation and disbursement of funds from the city treasury creates the legal issue. Disbursements of public funds are surrounded by many safeguards; the law requires that all disbursements conform to the safeguards provided. As an additional safeguard, in the area of uniform allowance, since 1952 the city's budget ordinance has required that the uniform allowance be paid directly to the supplier. Thus the city treasury is liable only to the extent of each man's allowance for uniforms actually delivered. It follows that if every man entitled to a uniform allowance does not exhaust it, the unexpended balance remains in the city treasury.

This conclusion is the rock upon which the ship of plaintiffs' vested right argument founders. Plaintiffs do not contend that the firemen individually or collectively could claim any unexpended balance. Yet, if the right to the allowance was vested absolutely, then the firemen would be entitled to either uniforms or cash, or both. The ordinance at issue could not be construed to warrant individual payment as was the ordinance in Kaufman v. Philadelphia, supra. The budget here provides a lump sum as opposed to the ordinance in Kaufman v. Philadelphia, supra, and therefore, if the manner of appropriation controlled, plaintiffs obtain no support from that case.

It is unrealistic to urge that the city has no legal interest in the uniforms worn by its uniformed services, or that it lacks authority "to interfere" with the manner in which the individual firemen spend the money. Plaintiffs urge this position even though the record reveals that the major cost of the uniforms is borne by the city. The city has a vital interest in all phases of the question of uniforms because it has not only deemed it advisable to have uniforms but bears

the larger part of the expense, and is solicitous that its uniformed services be garbed in a proper and creditable manner.

We do not doubt that the city could appropriate money for uniforms as additional compensation; indeed, for many years it did so. See the Ordinance of 1911, page 583, sec. 2, item 1 et seq: "For salaries: Superintendent of Police, and uniforms, four thousand six hundred (4,600) dollars . . . ". But the manner in which this item is disbursed remains at the option of the city and is not within the area of choice of the individual. We find no basis for concluding that the firemen has a property right in the uniform allowance; the allowance is not appropriated to them; if it were then the individual could spend the allowance as he chose. The record indicates that if a fireman purchased used clothing from another fireman the city would not honor a voucher for the cost. The testimony reveals that the money may be paid only to the contractors supplying the uniforms and/or other items. Unless the city is obligated to pay the money, the firemen obtain no property right in the allowance.

Without regard to methods followed in the past, or methods now in vogue in other city departments, the law controlling expenditures by the city governs this matter. Funds in the treasury of the municipality belong to the public generally and can be disbursed only acccording to law. No one would argue that the city could, and indeed must, give the moneys appropriated for fire department salaries to a committee of firemen for disbursement. No one has argued that under this ordinance the firemen could demand the allowance in cash.

Why, therefore, must the city turn over control of moneys for uniforms to the same committee. The allowance is of grace, not right. The firemen benefit not

only to the extent that the city bears the cost, but also, they keep title to property for which they do not pay.

Kaufman v. Philadelphia, supra, relied upon by plaintiffs, is readily distinguishable. The city in this case is not obligated to pay the uniform allowance in cash to the individual; it has the power to prescribe the conditions upon which it will pay the allowance. Hypothetically, it is possible that in any one year the entire appropriation would remain unexpended because every fireman in the service of the city posessed a uniform which met minimum standards and, therefore, none required any replacements. The improbability of the foregoing illustration does not alter the fundamental principle involved, the power of law to determine method of expenditure.

It appears logical and is amply supported by the foregoing analysis that the city can set its position anywhere between two extremes, (1) requiring the firemen to purchase and provide their own uniforms, and (2) supplying them without cost from city supplies. If the city has the free choice of either alternative, then we see no conflict as a matter of law in choosing a method between the two extremes. The fact that the firemen pay any additional sum required and retain title in the uniforms does not foreclose the choice of the city. Once the city makes its choice, then the law governs the actual expenditure.

The present city charter prescribes that the procurement department "shall purchase, and when feasible store and distribute all personal property to be procured with funds from the City Treasurer": Section 6-500 (a) (1). The key language is "funds from the City Treasury". The prior enactment, Act of March 19, 1925, P. L. 56, limited purchases for the use of the department. In the instant case, the allowance may be used only after the proper officer of the city determines that individual requires use of all or part of the

allowance to meet the uniform standard. Then and only then does the city treasury bear any burden.

We note also, that the city charter is specific and we cannot read into the charter section, use of the department, as plaintiffs contend. The language is clear. The result is not absurd or unreasonable and follows the canons of statutory construction. Although analysis of the charter section is a sufficient basis for determination in favor of defendants, this matter has been fully explored so that the conclusion is amply supported in law and logic.

## Order

And now, to wit, May 13, 1957, plaintiffs' rule for a preliminary injunction is discharged.